IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JAMES NEWSON,

                Plaintiff,                        OPINION AND ORDER

  v.

                                                    12-cv-293-wmc

JANEL NICKEL, DONALD MORGAN,[*]
and GLEN BENNETT,

                Defendants.

---

      Plaintiff James Newson filed this lawsuit to challenge the conditions of his confinement by the Wisconsin Department of Corrections pursuant to 42 U.S.C. § 1983. More particularly, Newson claims he was denied employment by prison officials at the Columbia Correctional Institution in retaliation for an earlier lawsuit he brought against correctional officers and prison officials at the Green Bay Correctional Institution in 2006. Both sides have moved for summary judgment. (Dkts. # 17, # 57). After considering the factual record, the parties' submissions and the applicable law, the court will grant the defendants' motion and enter summary judgment on their behalf.

UNDISPUTED FACTS[**]

**A. Background**

      Newson is presently incarcerated by the Wisconsin Department of Corrections ("WDOC") at the Wisconsin Secure Program Facility in Boscobel. At the time he filed

---

[*] Although initially identified as "Captain Morgan," the defendant's name is Donald Morgan and the clerk is directed to amend the caption in this case accordingly.
[**] Except as noted, these background facts are undisputed by the parties.

his complaint in this case, Newson was assigned to the Columbia Correctional Institution ("CCI") in Portage.

At all times relevant to the complaint, defendant Janel Nickel was the Security Director at CCI.[1]  Since October 2010, defendant Donald Morgan has been employed as an Administrative Captain at CCI, serving as an assistant to the Security Director. Defendant Glen Bennett was a Food Service Manager at CCI until August 2012, when he became the Food Service Administrator.

Newson was transferred to CCI from the Green Bay Correctional Institution ("GBCI") in July 2010 as the result of a "segregation trade" between institutions. (Dkt. # 40, Morgan Aff., ¶ 10).  This lawsuit stems from Newson's unsuccessful efforts to obtain employment at CCI in early 2011.

**B.  Job Applications**

In September 2010, Newson enrolled in an 18-month Building Service Vocation ("BSV") course.  In January 2011, Newson applied for a maintenance job at the recommendation of a BSV instructor.  Newson contends that his application was rejected by the Security Department (on the authority of defendants Nickel and/or Morgan), which screens all such applications for potential threats to prison security.

In February 2011, Newson also applied for a job in the main kitchen.  This, too, was rejected.  Defendant Bennett reportedly commented to two other inmates that Newson would not be working in the kitchen because of his involvement with a previous

---

[1] Nickel worked at CCI until February 9, 2013.  She is presently employed by WDOC at the Dodge Correctional Institution as a supervisory officer.

2

lawsuit against correctional officers and prison officials at GBCI, alleging sexual assault and retaliation. *Newson v. Frank*, No. 06-cv-00913-LA (E.D. Wis.). While that case apparently settled amicably on June 24, 2010, Newson alleges that defendants Nickel and/or Morgan were responsible for Bennett's beliefs about Newson.

### C. Tutoring and Training Programs

On March 7, 2011, Newson enrolled in a six-month Custodial Service Vocational course. On April 13, 2011, Newson was certified through a program run by a state agency (the Wisconsin Department of Workforce Development) to work as an apprentice in the area of building maintenance or repair. On April 20, 2011, Morgan authorized Newson's work placement for prison employment, designating him as vocational class "C," which stands for "Custodial."

In mid-May 2011, Newson applied for and received an interview with an instructor (Mr. Monfort) for a math tutoring job. Before he could become eligible to work as a tutor, Newson had to complete a tutor training class.

On June 4, 2011, Newson wrote to Nickel expressing concern that he was not being cleared by security for employment. Nickel responded that she did not recall processing any job applications from Newson. Noting that the security department "rarely denies employment," Nickel encouraged Newson to continue applying for jobs at the institution.

Nevertheless, on June 7, 2011, Nickel was notified that he was not selected to participate in tutor training program. The following day Mr. Monfort told Newson that "security" did not approve his application for the tutor training class.

On June 26, 2011, Newson wrote to Morgan, asking again why the security department was denying him clearance for employment. Morgan reviewed Newson's conduct history and determined that there was no reason that security would have denied his application for employment. On or about October 24, 2011, Newson received a notice to begin tutor training on Monday, October 31, 2011.

**D. Follow Up**

In his pending lawsuit, Newson claims that Nickel, Morgan and Bennett were "blacklisting" him from obtaining employment in retaliation for filing a lawsuit against correctional officers at GBCI. Newson maintains that he is entitled to prevail on the current record, and seeks summary judgment on his behalf. Defendants maintain, among other things, that Newson cannot demonstrate that retaliation was the motivating force behind the adverse hiring and training decisions at issue, nor that there was any causal connection behind his 2006 lawsuit and his failure to obtain employment at CCI in early 2011.

OPINION

The purpose of summary judgment is to determine whether the parties have gathered and can present enough evidence to support a jury verdict in their favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Albiero v. City of Kankakee*, 246

4

F.3d 927, 932 (7th Cir. 2001). Summary judgment is appropriate if there are no genuinely disputed material facts, and if on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The applicable substantive law will dictate which facts are material. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). A factual dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *Roger Whitmore's Auto. Serv., Inc. v. Lake County, Ill.*, 424 F.3d 659, 667 (7th Cir. 2005).

I. Retaliation

Pursuant to 42 U.S.C. § 1983, Newson alleges claims for retaliation in violation of his rights under the First Amendment to the United States Constitution. To establish a *prima facie* case of retaliation, an inmate must produce evidence that (1) he engaged in constitutionally protected speech; (2) he suffered an adverse action or deprivation likely to deter protected speech; and (3) there was a causal connection between the two (*i.e.*, his protected speech was a motivating factor in the defendants' actions). *See Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012) (clarifying allocation of evidentiary burdens at summary judgment in light of *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009)); *Greene v. Doruff*, 660 F.3d 975, 977 (7th Cir. 2011) (same). If the inmate satisfies these elements, the burden shifts to the defendants to rebut the causal inference with evidence showing that they would have taken the same action even without any

5

retaliatory motive. *See Kidwell*, 679 F.3d at 965. In other words, defendants are not liable if the complained of deprivation "would have occurred anyway." *Greene*, 660 F.3d at 979.

### A. *Prima Facie* Evidence

At least for purposes of summary judgment, Newson's proof satisfies the first two elements necessary for a retaliation claim on the record now before this court. Prisoners have a First Amendment right to file lawsuits and to air legitimate grievances concerning the conditions of their confinement. *See, e.g., Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002); *Babcock v. White*, 102 F.3d 267, 276 (7th Cir. 1996). Likewise, the court assumes that being denied employment in prison constitutes a materially adverse act or deprivation that is likely to deter future First Amendment activity.[2] *See Jellis v. Hulick*, No. 10-3580, 422 F. App'x 548, 550, 2011 WL 2161359, at *2 (7th Cir. June 2, 2011) (finding inmate stated First Amendment retaliation claim where guard threatened to remove inmate from job because he filed a grievance).

With respect to his retaliation claims against Nickel and Morgan, however, Newson does not satisfy the third element. There is no evidence in this record permitting a finding of an intent to retaliate. As proof of retaliatory intent, Newson points to Nickel and Morgan having placed a "red dot" on his inmate "face card" (DOC-120) "to draw attention to" Newson's previous accusations of sexual assault by a prison guard and his lawsuit against GBCI officials. There are a number of problems with this evidence. First, Newson offers no evidence contradicting Nickel's statement that a red

---

[2] To the extent Newson is also claiming retaliation based on a denial of training that might *lead* to employment, the court need not opine on its viability for the reasons that follow.

dot is generally placed on an inmate's face card to alert prison personnel of past behavior that warrants additional security precautions. Such behaviors can include significant assaults, membership in a Security Threat Group, significant escape risk or predatory behavior. In Newson's case, his face card is accompanied by a designation "G" for his membership in a disruptive group, which would account for the red dot. Second, Nickel and Morgan deny placing the red dot that appears on Newson's face card or having any intent to retaliate against him. Third, and most important, both Nickel and Morgan deny having any previous knowledge of Newson's 2006 lawsuit against GBCI, noting that there is no mention of it in Newson's security files, and Newson offers *nothing* that would permit a trier of fact to find otherwise.

The evidence of retaliatory intent by Bennett is stronger, Newson presents a declaration from Jarred Alston, who reportedly heard Bennett say that he did not want to work with Newson because of his involvement in a lawsuit against a guard at GBCI. (Dkt. # 24). Bennett denies *both* (1) having any previous knowledge of Newson's 2006 lawsuit against GBCI and (2) making any of the comments attributed to him by Alston. Alston's declaration raises a classic disputed fact issue as to Bennett's harbored retaliatory animus and would require a trial as to Bennett if the only question were whether plaintiff has established a *prima facie* case of retaliation.

## B. Rebuttal Evidence

Assuming defendants knew about Newson's 2006 lawsuit, however, they also present evidence showing that there were legitimate, non-retaliatory reasons that Newson was not hired for employment in early 2011. Indeed, the evidence shows that *none* of the

7

defendants received any of Newson's inmate job applications from the area work supervisors, because Newson had unmet educational or vocational programming needs, which disqualified him from the employment he sought during the relevant time period. As outlined below, the undisputed evidence provided by defendants on this point is formidable.

In 2010 and 2011, inmate job applications were submitted to social workers who contacted education staff to determine whether or not inmates had education or vocational programming needs. If an inmate does not have educational or vocational programming needs, the social worker then submitted job applications directly to the area work supervisors.

Area work supervisors screen applications to determine which candidates they are interested in hiring. Screened applications are then forwarded to the security department for review of any security concerns. Security will review the inmate applicants for potential threat to security, institution adjustment and order, vulnerability and security classification. For example, security will look for gang affiliation, history of escape or assaultive and disruptive behavior, history of contraband offenses, including the use or possession of intoxicants. This list is not all-inclusive.

After applicants have completed security screening, the applications are returned to the work area supervisors. The area work supervisors then choose the candidates they wish to hire. Security is not involved in the final selection or hiring decision.

Here, it is also undisputed that Newson remained enrolled in school through March 2011. He did not graduate from the Building Services program until October

2011. While enrolled in school, he was not eligible for employment. Because he was still enrolled in school in January and February 2011, Newson was not eligible for the jobs he applied for in the maintenance department or the main kitchen. Moreover, the record reflects that Newson's application for work in the main kitchen was rejected by a social worker, who noted that Newson had an "ABE need," referencing Adult Basic Education, which took precedence over employment. (Dkt. # 20, Exh. C).

Defendants further present unrebutted evidence showing that Newson did not meet the prerequisite education levels to become a tutor. (Dkt. # 44, Scott Aff., ¶¶ 10-11). To obtain work as a tutor, Newson had to demonstrate reading and math at a 10th grade level and complete the tutor training course. A September 2011 assessment of Newson's reading and math skills showed that he possessed only a 7th or 8th grade level. While he was eligible to attend tutor training and continue his education, he was not eligible for a job as a tutor. (*Id.*).

Ultimately, Newson offers no evidence that would allow a reasonable trier of fact to conclude that he was qualified to even be considered for the positions at issue, much less that he lost a job opportunity for other than legitimate, non-retaliatory reasons. This is fatal to his retaliation claim. *See Zellner v. Herrick*, 639 F.3d 371, 379 (7th Cir. 2011). Because Newson has failed to raise a genuine issue of material fact in response to overwhelming rebuttal evidence, all defendants are entitled to summary judgment in their favor and plaintiff's motion must be denied.

ORDER

IT IS ORDERED that:

1) Plaintiff James Newson's motion for summary judgment (dkt. # 17) is DENIED.

2) Defendants' motion for summary judgment (dkt. # 57) is GRANTED.

3) Defendants' motion for a stay (dkt. #72) is DENIED AS MOOT.

Entered this 15th day of August, 2013.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge